**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-01061-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Erika Briana Ortiz, | |
| Defendant. | |

Pending before the Court is Defendant Erika Briana Ortiz's ("Ortiz") emergency motion for compassionate release (Doc. 92), which the government opposes (Doc. 96). For the following reasons, the motion is granted.

**RELEVANT BACKGROUND**

A.  <u>The Underlying Crime</u>

Ortiz is a 25-year-old woman who attended special education classes in high school before dropping out in 2014. (Doc. 45 ¶¶ 34, 43-44.) In or around 2015, Ortiz gave birth to her only child, a daughter. (*Id.* ¶ 35.) The child's father, who went to prison before the child was born, has never provided financial support. (*Id.*)

After her daughter's birth, Ortiz held a variety of jobs, including as a warehouse stocker and food delivery driver, but was never able to maintain consistent full-time employment. (*Id.* ¶ 45.) In the summer of 2019, Ortiz made contact via the internet with a man living in Mexico. (*Id.* ¶ 14.) At first, this man made romantic overtures toward Ortiz and offered to fix her car. (*Id.*) However, when Ortiz traveled to Mexico, the man

offered her $4,000 to smuggle drugs into the United States. (*Id.*) Facing financial pressure due to the loss of her most recent job, she agreed to do so. (*Id.* ¶ 9.) She also asked an acquaintance, Lorena Celeste Leon ("Leon"), to accompany her. (*Id.* ¶ 10.)

On August 6, 2019, Ortiz was caught attempting to drive a car loaded with drugs into the United States via the port of entry ("POE") in San Luis, Arizona. (*Id.* ¶ 7.) The drugs were wrapped in cellophane and stashed in a hidden compartment within the car. (*Id.* ¶ 8.) The packages contained over 25 kilograms of 99% pure methamphetamine and over 5 kilograms of heroin. (*Id.* ¶¶ 8, 11.)

Ortiz pleaded guilty to the crime of possession of methamphetamine with intent to distribute. (*Id.* ¶ 2.) Ortiz's advisory sentencing range under the guidelines was 46-57 months, but the government argued in its sentencing memo that a downward variance to 36 months was warranted in light of Ortiz's "educational and intellectual background," which "made it easier for more sophisticated members of this drug trafficking organization to take advantage of [her]." (Doc. 51 at 2-3.)

On January 27, 2020, sentencing took place. (Doc. 87.) Ortiz's counsel argued that no prison term was necessary. (*Id.* at 5-8.) This request was echoed by Ortiz's grandmother, who spoke on Ortiz's behalf and further explained that she would take care of Ortiz's daughter during any term of imprisonment. (*Id.* at 13 ["I will take custody if she gets incarcerated of the baby. But it's going to be really hard because they are so close, she's just stuck to her. And she looks just like her, she's like a little Mini-Me of her. And I just ask for you to be as lenient as you can."].)

The Court rejected Ortiz's request for no prison time, reasoning that "these are terrible drugs. They rip apart communities, they kill people, they ruin lives. And it's hard to even . . . imagine how many individual doses come from 29 [kilograms] of methamphetamine and five kilograms of heroin. This is thousands and thousands and thousands of hits that are going to rip apart families. So I start from the mindset that this was a very serious crime that deserves serious punishment." (*Id.* at 14-15.) However, the Court also concluded that Ortiz should receive a larger downward variance than that

requested by the government, because Ortiz had "no prior criminal history" and "didn't go out trying to find a way to make quick money by bringing drugs over, [she] got manipulated into this by this guy on the internet and didn't figure out that this was a drug deal until very late in the exchange." (*Id.* at 15-16.)  Although "[o]bviously once [Ortiz] realized that that's what was going on [she] should have not agreed to go forward . . . the way [she] got brought into this is pretty different from most of the cases that I see involving the importation of hard drugs through the port of entry." (*Id.* at 16.)  Thus, the Court imposed a below-guidelines sentence of 24 months' imprisonment.

B.      Compassionate Release Request

According to the BOP's inmate locator website, Ortiz's projected release date is October 3, 2021.

On November 25, 2020, Ortiz submitted a request for compassionate release to the warden at her prison facility.  (Doc. 92-1 at 8-10.)  Ortiz asserts that the warden never responded to this request (Doc. 92 at 5; Doc. 92-1 at 15; Doc. 100 at 2) and the government doesn't appear to dispute this contention.

On January 6, 2021, Ortiz submitted a second request for compassionate release to the warden at her prison facility.  (Doc. 92-1 at 15-17.)  Ortiz asserts that the warden never responded to this request (Doc. 100 at 2) and the government has not controverted this assertion.

On January 20, 2021, Ortiz filed a motion for compassionate release.  (Doc. 92.)  In a nutshell, Ortiz argues that she is eligible for relief because she has exhausted her administrative remedies, because her prison facility recently experienced a "widespread outbreak" of COVID-19, because her body mass index ("BMI") was recently measured at 34 (and such "obesity alone qualifies as an extraordinary and compelling . . . reason to warrant a reduction of her sentence"), and because her family members have gone through several recent "health crises" that amount to extraordinary and compelling family circumstances.  The health crises are that (1) Ortiz's grandmother, who has served as the primary caregiver for Ortiz's daughter during Ortiz's term of incarceration, is 5'4" tall,

weighs 320 pounds, is afflicted by asthma, and had to go to the emergency room in January 2021 due to a fall and a foot infection; and (2) Ortiz's grandmother's husband, who has stage-four liver cancer, has undergone several amputation procedures since July 2020. (*Id.* at 7-9.) According to Ortiz, these developments have made it impossible for her grandmother to properly care for her daughter or to attend to her daughter's schooling. (*Id.* at 9.)

On February 1, 2021, the government filed an opposition to Ortiz's motion. (Doc. 96.) Although the government agrees that Ortiz is statutorily eligible for relief, it argues that "the § 3553(a) factors weigh against a reduction in defendant's sentence." (*Id.* at 1.) Specifically, the government argues that granting Ortiz's motion, which would effectively reduce Ortiz's sentence to 12 months' imprisonment, would (1) undermine the need for deterrence, because would-be drug traffickers must know they face significant punishment, and (2) result in unwarranted disparities, because Ortiz's less-culpable co-defendant (Leon) received an 18-month sentence. (*Id.* at 11.) Finally, the government argues that the recent health complications discussed in Ortiz's motion do not justify relief because her grandmother is still able to care for her child and her grandmother's husband is not the child's caregiver. (*Id.* at 10.)

On February 8, 2021, Ortiz filed a reply. (Doc. 100.) She asserts that relief is warranted due to "the confluence of multiple crises, including a worldwide pandemic with increased health risk, extended school closures, three emergency leg amputations, required around the clock health care, and the related fall-out from each circumstance." (*Id.*)

**DISCUSSION**

"The statute authorizing compassionate release as it exists today was first enacted as part of the Comprehensive Crime Control Act of 1984." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). "That original statute, unlike the current law, gave BOP exclusive power over all avenues of compassionate release. For over 30 years any motion for compassionate release had to be made by the BOP Director." *Id.*

This statutory framework changed in 2018, when Congress passed the First Step

Act. *Id.* at 233. Among other things, the First Step Act removed "the BOP as the sole arbiter of compassionate release motions." *Id.* Now, although the "BOP is still given the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf, under Congress' mandate a defendant now has recourse if BOP either declines to support or fails to act on that defendant's motion." *Id.*

The standards for evaluating a compassionate release motion are set forth at 18 U.S.C. § 3582(c)(1)(A). Among other things, the court "may" grant a compassionate release motion and reduce a defendant's term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). The applicable policy statement, in turn, is found at USSG § 1B1.13. It provides that the court may reduce a term of imprisonment if three conditions are met: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." *Id.*

Applying these standards, the Court concludes that Ortiz's request for compassionate release should be granted. As an initial matter, Ortiz has exhausted her administrative remedies (by unsuccessfully petitioning the warden at her facility) and all parties agree that Ortiz is statutorily eligible for relief in light of her obesity.

On the merits, the circumstances of this case are truly tragic, extraordinary, and compelling. Ortiz's young daughter is being raised by Ortiz's grandmother, but the COVID-19 pandemic and other health complications are wreaking havoc on her grandmother's ability to carry out this crucial responsibility (and on her grandmother's spouse's ability to provide support). Ortiz's family is hanging on by a thread—between hospitalizations, amputations, and the overhang of the pandemic, the fragile care system that was established for Ortiz's daughter during Ortiz's prison term may fall apart at any

moment. Meanwhile, Ortiz can only observe these developments from afar, as she sits in prison with a condition that renders her particularly susceptible to COVID-19's effects. It is difficult to conjure a more chaotic and stressful set of facts more worthy of compassion.

Of course, no matter how sympathetic the circumstances, compassionate release is not authorized under § 3582 if the defendant would pose a danger to the safety of the community upon release or if the reduced sentence would be impermissible in light of the § 3553 sentencing factors. Although these considerations often, in the Court's experience, foreclose the availability of relief under § 3582,[1] they do not stand as an obstacle to relief here. The government does not suggest that Ortiz would pose a danger to the community upon release and any such suggestion would fail. Ortiz had no criminal history before this case and her participation in the underlying crime appears to have been aberrant. Additionally, the Probation Office has investigated Ortiz's proposed release plan and concludes that "[n]o criminal risks were identified." (Doc. 92-1 at 71.)

As for the § 3553 factors, although the Court doesn't discount the government's argument that granting compassionate release requests in POE drug-smuggling cases could undermine the need for general deterrence—indeed, the Court specifically invoked the need for general deterrence as one reason for rejecting Ortiz's original request for a non-custodial sentence[2]—it must be recalled that all parties agreed at sentencing that a variance was warranted in light of Ortiz's particularly sympathetic circumstances (which have only grown more sympathetic since sentencing). Moreover, even after her motion is granted, Ortiz will have spent more than a year in federal prison. Granting a compassionate release

---

[1] *See, e.g.*, *United States v. Vasquez*, 2021 WL 229239 (D. Ariz. 2021); *United States v. Woods*, 2020 WL 7771036 (D. Ariz. 2020); *United States v. Herrera*, 2020 WL 7388475 (D. Ariz. 2020).

[2] Doc, 87 at 15-16 ("I need to consider the need for deterrence. Although I don't think that you are a risk to commit future crimes, I also need to think more broadly about deterrence. There are all sorts of people in Arizona who are down on their luck, who are short on rent, need to pay for their kids' school clothes and other things, just like the circumstances you were facing. A lot of people are tempted to make quick money. But we need to make sure that other people don't succumb to the desire to mak[e] quick money by bringing drugs into the country. And so the types of sentences that need to get imposed in this type of case need to be high enough that people know there are real consequences that come from bringing these staggering amounts of drugs into the country.").

request in this particular case, under these particular facts, will not undermine the need for deterrence under § 3553.

The more difficult question is whether granting Ortiz's motion would conflict with § 3553(a)(6)'s goal of avoiding unwarranted sentencing disparities. Ortiz's co-defendant, Leon, received an 18-month sentence. It stands to reason that Ortiz should not receive less time than her less-culpable co-defendant (whom she helped recruit). To avoid this outcome, Ortiz proposes that the Court "add a term of home confinement as a condition of supervised release." (Doc. 100 at 1.) This is a sound proposal. Requiring Ortiz to spend the first year of her term of supervised release in home confinement, after she has spent more than one year in federal prison, will ensure that her overall sentence isn't so lenient when compared with Leon's as to create an unwarranted sentencing disparity. *Cf. United States v. Lewis*, 2020 WL 5095471, *7 (W.D. Wash. 2020) (granting motion for compassionate release and finding "that as an additional condition of the supervised release previously imposed, Mr. Lewis shall serve the first twelve months of his term of supervised release on home confinement").

…

…

…

…

…

…

…

…

…

…

…

…

…

Accordingly, **IT IS ORDERED** that Ortiz's motion for compassionate release (Doc. 92) is **granted**.

**IT IS FURTHER ORDERED** that as an addition condition of supervised release, Ortiz must participate in the Location Monitoring Program for a period of <u>12 months</u> utilizing the monitoring technology at the probation officer's discretion and must abide by all technology requirements. Ortiz is restricted to her residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the officer. Ortiz must follow all program rules and pay all or part of the costs of participation in the Location Monitoring Program as directed by the Court and/or officer.

**IT IS FURTHER ORDERED** releasing Defendant Erika Briana Ortiz from custody as to this matter **<u>only.</u>**

Dated this 10th day of February, 2021.

_____
Dominic W. Lanza
United States District Judge